GOODENOW *et al.* v. EWER *et al.*

At common law, a mortgage was regarded as a conveyance of a conditional estate, and upon breach of its condition, the estate became absolute; but Courts of Equity, to relieve from the hardship of this rule, gave to the mortgagor a right to redeem upon payment, within a reasonable time, of the debt secured.

The nature of the mortgagor's right to redeem, and of the mortgagee's right to foreclose, stated.

The decree in a foreclosure suit, under the old equity system, usually directed the mortgagor to assert his right by payment of the principal sum due, interest and costs, within a designated period, or be barred of his equity. The decree operated directly upon the property, and its effect was to restore the same, upon payment, to the mortgagor; or to vest, upon failure of payment, an absolute title in the mortgagee. To give any efficacy to the decree, it was essential that the owner of the equity should be brought before the Court; and he was an indispensable party to a valid foreclosure.

In this State, a mortgage is not regarded as a conveyance vesting in the mortgagee any estate in the land, either before or after condition broken, but is regarded as a mere security, operating upon the property as a lien or incumbrance only.

The proceeding for a foreclosure of the equity of redemption, as those terms are understood where the common law view of mortgages is maintained, is unknown to our system, so far, at least, as the owner of the estate is concerned.

Goodenow *v.* Ewer.

The mortgagee can here in no case become the owner of the mortgaged premises, except by purchase, upon a sale under judicial decree, consummated by conveyance.

Proceedings in the nature of a suit to foreclose an equity of redemption, held by a subsequent incumbrancer, may be maintained by a purchaser under the decree, where such incumbrancer was not made a party to the original suit to enforce the mortgage. Such incumbrancer may be called upon to assert his right, by virtue of his lien, and his equity of redemption, extending to the period provided by the Statute of Limitations, be thus reduced to the statutory period of six months.

The owner of the mortgaged premises, where no power of sale is embraced in the mortgage, cannot, under any circumstances, be cut off from his estate, except by sale in pursuance of the decree of the Court. To give validity to such decree, the owner must be before the Court when it is rendered. No rights which he possesses can otherwise be affected, and any direction for their sale would be unavailing for any purpose.

A mortgagor, when he has not disposed of his interest, is a necessary party to a suit for a foreclosure and sale, under our law, even though no personal claim be asserted against him. If he has parted with the estate, his grantee stands in his shoes, and possesses the same right to contest the lien, and to object to the sale. And if the grantee be not made a party, the purchaser under the decree acquires no title.

It is only when the owner of the estate—whether such owner be the mortgagor or his grantee—has had his day in Court, that a valid decree can pass for its sale. Under such decree, the purchaser takes the title which the mortgagor possessed, whatever it may have been, at the execution of the mortgage.

It is to sales under decrees of this character, that reference is made in *Belloc* v. *Rogers*, (9 Cal. 125) when it is said that "the purchaser obtains whatever title was in the mortgagor at the instant of time when he executed the mortgage."

And it is only to conveyances upon sale under such decrees, that the language of the Court in *McMillan* v. *Richards*, (9 Cal. 412) "that they take effect from the date of the mortgage," is applicable. The conveyances thus take effect, not so much from any application of the doctrine of relation, as from the fact that it is the estate of the mortgagor, by whomsoever held, which is brought directly under the operation of the decree.

The language used by this Court, in some cases, that such conveyances take effect from the date of the mortgage *by relation*, explained as above.

D. and M. are owners each of one undivided one-half of certain real estate. D. executes a mortgage to plaintiffs upon his undivided half, which was recorded on the same day. Subsequently, D. and M. convey to defendant, E., an undivided one-third of the entire property—making D., M. and E. each owners of one undivided one-third—one-half of E.'s interest being subject to the mortgage to plaintiffs. Plaintiffs foreclose—making D. alone party—get judgment for the amount due, and a decree directing a sale of all the interest D. had at date of mortgage. At the sale, plaintiffs become the purchasers for the full amount of their judgment, costs, etc., and in due time receive a Sher-

Goodenow *v.* Ewer.

iff's deed, no redemption being made. Meantime, but subsequent to the decree, and before the Sheriff's deed, E. purchases the remaining interest of D. and M. Plaintiffs sue for the sale of the property—a partition being impossible without prejudice—and for an account from the tenant in possession ; and ask to be reimbursed from the proceeds of the sale the one-third of the amount bid by them at the sale under their decree of foreclosure, on the ground that the decree was invalid as to the one-sixth interest conveyed to E. ; and that plaintiffs believed, at the time of their bid, they were acquiring a title to all the interest D. had at the date of his mortgage to them ; and that the Sheriff stated such interest was offered for sale : *Held,* that the bid of plaintiffs, being for the full amount of their judgment, satisfied it; and that the effect of this satisfaction was to discharge the undivided one-sixth held by E. from the lien of the mortgage.

*Held, also,* that plaintiffs cannot be reimbursed in the amount bid, even though they acted under a mistake as to the effect of the decree and sale thereunder ; that their mistake was one of law, against which Courts of Equity seldom relieve in an independent action—the weight of authority in the United States being not to relieve, unless the mistake be accompanied with special circumstances, such as misrepresentation, undue influence, or misplaced confidence.

*Held, also,* that upon proper application in the original foreclosure suit, the Court would have released the plaintiffs from the purchase, set the sale aside, and opened the decree, and allowed them to file a supplemental complaint, bringing in E. and others interested, as parties.

Courts of Equity are ever ready to grant relief from sales made upon their decrees, where there has been irregularity in the proceedings rendering the title defective, as well when the purchaser or parties interested have been misled by a mistake of law as to the operation of the decree, as when they have been misled by a mistake of fact as to the condition of the property, or the estate sold, provided application be made to them in the suits in which such decrees are entered within a reasonable time, and the relief sought will not operate to the prejudice of the just rights of others.

The nature and extent of the relief in such cases, are matters resting very much in the sound discretion of the Court. As a general rule, the purchaser will be released and a resale ordered, or such new or additional proceedings directed as may obviate the objections arising from those originally taken, when the consequences of the mistake are such that it would be inequitable, either to the purchaser or to the parties, to allow the sale to stand. But when relief is sought in one action from a purchase made upon a mistake of law as to the effect of a decree rendered in another action, it seems that the ordinary rules as to mistakes of law should apply—and from such, Courts of Equity seldom relieve.

In this case, relief cannot be granted, as no special circumstances are shown, and no excuse offered for neglecting to apply for relief in the original foreclosure suit. And further, this action is not brought directly for relief from the sale, but for as ale of the property, an account as incident to a partition, and distribution of the proceeds among the owners, tenants in common thereof; and D., the mortgagor, is not made a party.

Goodenow *v.* Ewer.

The rights of plaintiffs to the proceeds arising from the sale, must be limited by the extent of the interest they acquired in the premises under their conveyance —that is, to one-third; and from this one-third, their proportionate share of the costs and expenses of the action, and subsequent proceedings, must be deducted.

One tenant in common out of possession, may, in equity, as a collateral incident to a claim for partition, compel his cotenant in possession to account for rents and profits received by him from tenants of the premises.

From rents so received, the tenant in possession may deduct the amounts paid for taxes and for necessary and proper repairs and additions for the preservation and security of the building held in common during the period for which the rents were collected. And where the building contained theater rooms, which were let from time to time with the furniture thereof—as carpets, lamps and scenery—which furniture was the individual property of the tenant in possession, he is entitled, in the accounting, to a reasonable allowance, to be deducted from the rents, for the use of such furniture, when such use was required in order to let the premises themselves. But he is not entitled to allowances for the use of any individual property in connection with the premises not thus required, nor to any allowances for his personal services in taking charge of the building, renting the same, and collecting the rents.

*Pico* v. *Columbet* (12 Cal.) commented upon.

Appeal from the Fifteenth District.

Action for the sale, as on partition, of a certain lot in Oroville, with a building thereon—known as the "Metropolitan Theater property"— held by the parties as tenants in common, and for an accounting from defendant, Ewer, who is in possession.

Plaintiffs claim, as owners of half the property, by virtue of a Sheriff's deed to them, as stated in the opinion. Ewer was in possession, receiving rents, from and after the Sheriff's sale under the decree of foreclosure of mortgage to plaintiffs.

The complaint of plaintiffs states that the reason of not making Ewer and other defendants—who held a subsequent mortgage and mechanics' lien on the property—parties to their foreclosure suit, was that they were not "cognizant of the requirements of the law in such cases." The prayer of the complaint is, that Ewer account for and pay to plaintiffs one-third of the rents, etc., received since June, 1858, the date of the Sheriff's sale, that the property be sold, the costs of suit be paid out of the proceeds, and one-third of the remainder be paid to plaintiffs; that plaintiffs may have, in addition, nine hundred and seventy-two dollars and eighty-three cents, (being one-third of their judgment in the foreclosure suit) with three per cent. per month interest from June, 1858,

the time of sale, provided one-sixth of the net proceeds of the property should amount to that sum; or if the one-sixth brought less, then plaintiffs prayed for the one-sixth part of whatever was realized.

The Court below held that plaintiffs, by their purchase, in June, 1858, obtained title to one-third part of the property; that by their bid and purchase they extinguished their judgment, and lost their lien on the one-sixth of the property sold by Downer and Morris to Ewer before the commencement of the foreclosure suit; that defendant Ewer was entitled to two-thirds of the proceeds of the property; that plaintiffs were entitled to one-third of the rents from the time they got the Sheriff's certificate until they got his deed, that is, from June 23d, 1858, to January 8th, 1859, but that they were not entitled to any rents after receiving the deed.

Other facts appear in the opinion of the Court.

Plaintiffs appeal.

*Robinson, Beatty & Heacock,* for Appellants.

*Jos. E. N. Lewis,* for Respondents.

Counsel on both sides filed elaborate arguments, in the course of which they cited numerous authorities; but they did not separate their *points* and *authorities* from the argument, and hence neither are given. It is not the duty of the Reporter to prepare *points* from the general argument of counsel.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

This is a suit for the sale of real property held by different parties as tenants in common, a partition being impossible without prejudice to the owners, and for an accounting from the tenant in possession. The material facts disclosed by the record are briefly as follows: On the first of May, 1857, Downer and Morris were the owners, each of an undivided one-half, of certain premises situated in the county of Butte. On that day, Downer executed a mortgage upon his undivided half to the plaintiffs, to secure the payment of his promissory note to them of $2,000, and interest. This mortgage was, on the same day, placed on record. In June following, Downer and Morris sold and conveyed to the defendant, Ewer, an undivided one-third of the entire property. Downer, Morris and Ewer each thus possessed one undivided third

interest in the premises—one-half of Ewer's interest, that is, one undivided sixth of the entire property held by him, being subject to the mortgage of Downer. In December of the same year, the note of Downer having matured, and not being paid, the plaintiffs instituted suit for the foreclosure of his mortgage, and the sale of his interest in the premises, making him the sole party defendant, and in January, 1858, obtained the usual judgment for the amount due, and a decree directing a sale of all the interest which he possessed in the premises at the date of the mortgage. Under this decree the sale was made, in June, 1858. At the sale, the plaintiffs became the purchasers, for the sum of $2,918.50, that being the full amount of the judgment, interest and costs, and received the Sheriff's certificate; and in January, 1859, no redemption having been made, obtained the Sheriff's deed. In the meantime, and subsequent to the entry of the decree, the defendant, Ewer, purchased the remaining interest of both Downer and Morris in the premises—that of Morris at Sheriff's sale, in February, 1858, afterwards consummated by conveyance—and that of Downer, in March, 1858—thus becoming the owner of the entire property, subject only to the mortgage to the plaintiffs, and the judgment in the foreclosure suit.

The claim of the plaintiffs to partition is based upon their deed, and its efficacy in the transfer of the title depends upon the decree under which the sale was made and the deed executed. The validity and effect of the decree are to be determined by a consideration of the nature of the contract of mortgage, and the parties who are required to be brought into Court before the contract can be enforced.

At common law, a mortgage was regarded as a conveyance of a conditional estate, and upon breach of its condition, the estate became absolute. But from an early day, Courts of Equity interfered, and to prevent the hardship consequent, by the strict rules of law, upon a failure in the performance of the conditions attached to the conveyance, gave to the mortgagor a right to redeem upon payment, within a reasonable time, of the debt secured. This right was established from a consideration of the real character of the transaction, as one of security, and not of purchase, and its purpose was to give effect to the intention of the parties against the terms of the instrument. And this right is now held to be an inseparable incident to every mortgage, and cannot be abandoned or waived, even by express stipulation of the parties at the time of its execution. But with this right in the mortgagor, to

redeem from the consequences of his default, which was termed an equity of redemption, as it could be enforced only in a Court of Equity, there was recognized a corresponding right in the mortgagee to insist upon the redemption being made within a reasonable period, or a relinquishment of its right, and for that purpose he could also resort to a Court of Equity. The proceeding for this purpose, on his part, was the suit, as it was termed, for a foreclosure of the mortgage—that is, for the extinguishment of the equity of redemption held by the mortgagor. The decree in the suit usually directed the mortgagor to assert his right, by payment of the principal sum due, interest and costs, within a designated period, or be barred of his equity. The decree operated directly upon the property, and its effect was to restore the same, upon payment, to the mortgagor; or to vest, upon failure of payment, an absolute title in the mortgagee. To give any efficacy, therefore, to the decree, it was essential that the owner of the equity should be brought before the Court. The equity was regarded as the real and beneficial estate in the land, and was subject to sale and conveyance, in any of the ordinary modes of transfer. If it had passed from the mortgagor, the decree would, of course, be of no avail without the presence of his grantee—for it is a rule, as old as the law, that no decree shall prejudice the rights of persons who are not parties to the suit. Without such presence, no equity of redemption would be foreclosed, and the mortgagee's estate would remain unaffected as it existed previous to the institution of the suit in which the decree was rendered. The holder of the equity of redemption—of the beneficial estate—was, therefore, an indispensable party to a valid foreclosure.

In this State, a mortgage is not regarded as a conveyance vesting in the mortgagee any estate in the land, either before or after condition broken. It is regarded, as in fact it is intended by the parties, as a mere security, operating upon the property as a lien or incumbrance only. Here the equitable doctrine is carried to its legitimate result. Between the view thus taken and the common law doctrine—that the mortgage is a conveyance of a conditional estate—there is no consistent intermediate ground. In those States where the mortgage is sometimes treated as a conveyance, and at other times as a mere security, there is no uniformity of decision. The cases there exhibit a fluctuation of opinion between equitable and common law views of the subject, and a hesitation by the Courts to carry either view to its logical consequences. In *McMillan* v. *Richards*, (9 Cal. 365) we had occasion to

consider the subject at great length, and to observe upon the diversity existing in the adjudged cases. We there asserted what had previously been held in repeated instances, the equitable doctrine as the true doctrine respecting mortgages, and have ever since applied it under all circumstances. (See *Nagle* v. *Macy*, 9 Cal. 426; *Haffley* v. *Maier*, 13 Id. 13; *Koch* v. *Briggs*, 14 Id. 256; *Clark* v. *Baker*, Id. 612; and *Johnson* v. *Sherman*, 15 Id.) When, therefore, a mortgage is here executed, the estate remains in the mortgagor, and a mere lien or incumbrance upon the premises is created. The proceeding for a foreclosure of the equity of redemption, as those terms are understood where the common law view of mortgages is maintained, is unknown to our system, so far, at least, as the owner of the estate is concerned. The mortgagee can here, in no case, become the owner of the mortgaged premises, except by purchase, upon a sale under judicial decree consummated by conveyance. Proceedings in the nature of a suit to foreclose an equity of redemption, held by a subsequent incumbrancer, may undoubtedly be maintained by a purchaser under the decree, where such incumbrancer was not made a party to the original suit to enforce the mortgage. Such incumbrancer may be called upon to assert his right, by virtue of his lien, and his equity of redemption, extending to the period provided by the Statute of Limitations, be thus reduced to the statutory period of six months. But the owner of the mortgaged premises, where no power of sale is embraced in the mortgage, cannot, under any circumstances, be cut off from his estate, except by sale in pursuance of the decree of the Court. (See Prac. Act, sec. 260; *Whitney* v. *Higgins*, 10 Cal. 547; *Montgomery* v. *Tutt*, 11 Id.) To give validity to such decree, the owner must be before the Court when it is rendered. No rights which he possesses can otherwise be affected, and any direction for their sale would be unavailing for any purpose. A mortgagor, when he has not disposed of his interest, is a necessary party to a suit for a foreclosure and sale under our law, even though no personal claim be asserted against him. The fact that a mortgage is executed upon the premises does not, of itself, authorize proceedings for their sale without making him a party. He has a right to be heard before his estate can be subjected to sale to satisfy any alleged lien, without reference to any personal claim against himself. If he has parted with the estate, his grantee stands in his shoes, and possesses the same right to contest the lien and to object to the sale. The object of the sale is to subject such estate as the mortgagor held at the time to the satisfaction

of the lien which he created, and if that estate has been disposed of, a decree directing its sale without the presence of its owner would be a mere arbitrary act, condemning, without hearing, one man's property to pay another man's debt.   It is only when the owner of the estate has had his day in Court, that a valid decree can pass for its sale.   It is only under a decree of this nature that a purchaser can acquire any title.   It is then that he will take the title which the mortgagor possessed—whatever it may have been—at the execution of the mortgage. It is to sales under decrees of this character that Mr. Justice Burnett refers when, in *Belloc* v. *Rogers*, (9 Cal. 125) he says that "the purchaser obtains whatever title was in the mortgagor at the instant of time when he executed the mortgage."   And it is only to conveyances upon sales under such decrees that the language of the Court in *McMillan* v. *Richards*, (9 Cal. 412) "that they take effect from the date of the mortgage," is applicable.   The conveyances thus take effect, not so much from any application of the doctrine of relation—though language to this purport is often used in judicial decisions, and has been sometimes thus used, we believe, by ourselves—as from the fact that it is the estate of the mortgagor, by whomsoever held, which is brought directly under the operation of the decree.

It follows from these views that the decree in the foreclosure suit, brought by the plaintiffs against Downer, did not affect the one undivided sixth of the premises which had been previously conveyed by him to the defendant Ewer.   At the institution of that suit, Downer possessed only two-sixths of the premises, and Ewer was not made a party.   Ewer's interest remained, therefore, after the decree precisely as it stood before—subject merely to the lien of the mortgage.   The decree operated only upon the estate held by Downer at the commencement of the suit; the Court did not acquire jurisdiction to condemn any other, and the sale and conveyance only passed the same to the plaintiffs.

At the sale, the plaintiffs bid the full amount due on their judgment, and thus satisfied the same, and the effect of this satisfaction was, to discharge the one undivided sixth, held by Ewer, from the lien of the mortgage.   But the plaintiffs allege, that at the time they made their bid, they believed they were acquiring a title to all the interest which Downer possessed at the date of the mortgage, and that it was stated by the Sheriff that such interest was offered for sale; and these circumstances are made the foundation, in connection with the invalidity of so

much of the decree as directs the sale of the one undivided sixth conveyed to Ewer, for a claim to reimbursement of one-third of the amount bid, from the proceeds of the sale prayed for in the present action. No such claim can be maintained, and the ruling of the Court below, in disallowing it, was correct. It may be true, that the plaintiffs acted under a mistake as to the effect of the decree and sale thereunder. The deed to Ewer was on record, and they allege, in their complaint, that they neglected to make him and others parties, in ignorance of the requirements of the law in such cases. The statement of the Sheriff was only in accordance with the direction of the decree, of the terms of which they were fully acquainted, as it was rendered in their own action. They, at least, were not misled by that statement. Their mistake, therefore, was one of law, purely, and against the consequences of a mistake of this character, Courts of Equity seldom grant relief in an independent action. Upon proper application, in the original foreclosure suit, the Court would, undoubtedly, have released the plaintiffs from the purchase, set the sale aside, and opened the decree, and allowed them to file a supplemental complaint, bringing in Ewer and others interested as parties. Courts of Equity are ever ready to grant relief from sales made upon their decrees, where there has been irregularity in the proceedings, rendering the title defective, as well when the purchaser or parties interested have been misled, by a mistake of law, as to the operation of the decree, as when they have been misled by a mistake of fact, as to the condition of the property, or the estate sold, provided, application be made to them in the suits in which such decrees are entered, within a reasonable time, and the relief sought will not operate to the prejudice of the just rights of others. (*Kohler* v. *Kohler,* 2 Edw. Ch. 69 ; *Post* v. *Leet,* 8 Paige, 337 ; *Seaman* v. *Hicks,* 8 Id. 665 ; *Darvin* v. *Hatfield,* 4 Sand. Sup. Ct. 468 ; *Brown* v. *Frost,* 10 Paige, 243.) The nature and extent of the relief, in such cases, are matters resting very much in the sound discretion of the Court. As a general rule, the purchaser will be released, and a resale ordered, or such new or additional proceedings directed as may obviate the objections arising from those originally taken, when the consequences of the mistake are such that it would be inequitable, either to the purchaser or to the parties, to allow the sale to stand. But when relief is sought in one action, from a purchase made upon a mistake of law as to the effect of a decree rendered in another action, there would seem to be no just reason why the ordinary rule as to mistakes of law should not

apply. From the consequences of this class of mistakes, Courts of Equity seldom relieve, as we have already stated. Indeed, the weight of authority in the United States is, that the mistake, unless accompanied with special circumstances, such as misrepresentation, undue influence, or misplaced confidence, constitutes no ground for relief. "It may be safely affirmed," says Mr. Justice Story, "upon the highest authority, as a well established doctrine, that a mere naked mistake of law, unattended with any such special circumstances as have been above suggested, will furnish no ground for the interposition of a Court of Equity; and the present disposition of Courts of Equity is, to narrow, rather than to enlarge the operation of exceptions." (Story's Equity, sec. 138.)

The mistake which the plaintiffs allege was not accompanied with any special circumstances which would entitle it to any more favorable consideration than if it were made in reference to an ordinary contract, and no excuse is offered for neglecting to apply for relief in the original foreclosure suit. Besides these considerations, the present action is not brought directly for relief from the sale; it is brought for another purpose, and Downer, the mortgagor, is not a party before the Court.

The right of the plaintiffs to the proceeds arising from the sale must be limited, therefore, by the extent of the interest they acquired in the premises, under their conveyance—that is, to one-third; and from this one-third their proportionate share of the costs and expenses of the action and subsequent proceedings, must be deducted. (Practice Act, sec. 308.)

The other questions presented by the record arise upon the accounting decreed. In that accounting, the Court allowed the claim of the plaintiffs against the defendant Ewer, for a proportionate share of the rents of the six months intervening between the sale of the Sheriff and the execution of his deed; but disallowed the claim for a proportionate share of the rents subsequently received. In the disallowance of this last claim, the Court erred. Of these rents the plaintiffs have a clear right to an accounting, and to a decree for their proportionate share, according to the extent of their interest in the premises; and there is nothing in the decision of this Court in *Pico* v. *Columbet* (12 Cal.) which denies this right. In that case, the question presented was, whether one tenant in common could maintain, *at law*, an action of account against his cotenant, who was in the exclusive possession of the entire premises, to recover a share of the profits from the estate; and we held that the action could not be maintained. In considering

the question, we stated the doctrine of the common law, and the reason upon which it rests, and the effect of the Statute of Anne, and also observed that, though we treated the case as an action of account at law, we should reach the same conclusion if the proceeding had been one in equity; that there was no equity in the claim asserted by one tenant to share in the profits resulting from the labor and money of his cotenant, when he had expended neither, and had never claimed possession, and had never been liable for contribution in case of loss. But, at the same time, we referred to cases where equity had sustained an account in favor of one tenant in common, out of possession, against his cotenant in possession, for the rents and profits, and commented upon them. We showed that, with some exceptions, the cases were those in which the account was a collateral incident to a claim for partition, and that the rents and profits claimed were due from the defendant, either as tenant of the plaintiff's interest, or were received by him, when they belonged to both parties, or were the proceeds of their joint labor or expenditures. Within the authorities thus referred to, the case of the plaintiffs in the present action falls. It is an accounting, as we understand, for the rents received by the defendant Ewer from tenants of the premises, which the plaintiffs seek, and not of the profits made by his own labor and expenditures, whilst personally in exclusive possession. Of rents thus received, the jurisdiction of equity to direct an account, as an incident to a partition, is unquestionable. From these rents the defendant is entitled to deduct the amount of the taxes paid, and of the expenses incurred in making necessary and proper repairs and additions, for the preservation and security of the buildings, during the period for which the rents were collected. He is also entitled to reasonable allowances, to be deducted from the rents, for the use of his individual property, when such use was required in order to let the premises themselves. It is not probable that he could have let the theater rooms, from time to time, as different theatrical companies required them, without, at the same time, letting the carpets, lamps, and scenery; and as these constituted his individual property, a reasonable allowance for them should be deducted from the rents received. But he is not entitled to allowances for the use of any individual property in connection with the premises not thus required, nor to any allowances for his personal services in taking charge of the building, renting the same, and collecting the rents. Upon retaking the account for the six months succeeding the sale, he will be entitled to similar deductions and allowances.

As the only error in the decree arises upon the accounting, the cause will be remanded, that a new accounting be had, in accordance with the views expressed in this opinion.  In the determination of the respective interests of the plaintiffs and the defendant Ewer in the premises, and in ordering a sale of the property, and in the confirmation of the report of the Referee appointed to make the sale, the decree is correct, and must be affirmed.